**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LENSAR, INC., | : | Case No. 16-12808 |
| Debtor.[1] | : | |

**MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105(A), 362(A)(3), AND 541 ESTABLISHING CERTAIN NOTICE AND HEARING PROCEDURES FOR TRANSFERS OF, OR CLAIMS OF WORTHLESSNESS WITH RESPECT TO, CERTAIN EQUITY INTERESTS OF THE DEBTOR**

Lensar, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**") hereby moves (the "**Motion**") for entry of interim and final orders under sections 105(a), 362(a)(3), and 541 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), establishing certain notice and hearing procedures that must be satisfied before shareholders may make transfers of, or claims of worthlessness with respect to, equity interests in the Debtor. These procedures will generally apply to all shareholders. In support of the Motion, the Debtor relies upon and incorporates by reference the Declaration of Nicholas T. Curtis, Chief Executive Officer of the Debtor, filed with the Court concurrently herewith (the "**Curtis Declaration**"). In further support of the Motion, the Debtor, by and through its undersigned counsel, respectfully represents:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of the case and this Motion

[1] The Debtor in this case and the last four digits of the Debtor's federal tax identification number are: Lensar, Inc. (5724). The Debtor's corporate headquarters are located at 2800 Discovery Drive, Orlando, Florida 32826.

in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 362(a)(3), and 541. Such relief is warranted under Bankruptcy Rules 3001 and 3002.

**BACKGROUND**

2. On December 16, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court commencing this case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

3. The Debtor continues to manage and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in the Chapter 11 Case, and no committee has yet been appointed.

4. The Debtor was formed in 2004 under the laws of the State of Delaware and remains incorporated in Delaware. The Debtor's headquarters are located in Orlando, Florida. The Debtor is a high technology medical devices company that develops and markets lasers primarily for use in refractive cataract surgery. The Debtor's technology uses a unique imaging process which converts multiple two dimensional scans into a 3-D model based on each patient's biometric measurements.

5. The Debtor has approximately 54 employees, engaged in all aspects of developing the Debtor's laser technology, testing its clinical applications, interfacing with the Federal Drug Administration and other regulators, sales and marketing, and providing technical support to end-users.

6. The Debtor has 17 classes of stock consisting of (i) common stock ("**Common Stock**"), (ii) Series A-1 through Series A-6 preferred stock (collectively, the "Series A Equity Interests"), (iii) Series B, Series C, Series D, Series E, Series E-1, Series E-2, Series E-3 and/or Series E-4 preferred stock (collectively the "**Senior Preferred Equity Interests**") and

(iv) Series E-5 preferred stock (the "**E-5 Equity Interests**"). Because the calculation of 5% holders and a controlling holder both depend, in part, on the relative value of each series of preferred stock and the common stock, the exact amount of any given type of stock that would cause a shareholder to be a 5% holder can vary and it is not possible to definitively state in advance and in the abstract the number of shares that would constitute 5% or 50%. Moreover, multiple parties own shares in more than one series of preferred stock and common stock. The Debtor has not, therefore, attempted to define who is a 5% holder.

**RELIEF REQUESTED**

7. The relief sought by this Motion will allow the Debtor to monitor certain transfers of, and any worthlessness deductions with respect to, the Debtor's equity securities so that the Debtor can act expeditiously to prevent such transfers or deductions, if necessary, and preserve the value of its net operating losses (the "**NOLs**"), tax credits, and certain other tax attributes (collectively, the "**Tax Attributes**"). This will allow the Debtor the time necessary to obtain the requisite approval of a plan of reorganization, and for the plan to be effective, which maximizes the use and value of its NOLs. Immediate entry of the Interim Order is necessary to preserve the status quo in this regard.

8. In addition, the Debtor requests that this Court schedule a final hearing within 30 days of the Petition Date to consider approval of this Motion on a final basis.

9. The Tax Attributes are valuable assets of the Debtor's estate. The Internal Revenue Code of 1986, as amended (the "**Tax Code**"), generally permits corporations to carry forward their NOLs and tax credits to offset future taxable income, thereby reducing their federal tax liability in future periods.[2] The Debtor's Tax Attributes could allow the Debtor to

[2] See 26 U.S.C. §§ 39, 172.

significantly reduce future U.S. federal income tax liability, depending upon future operating results of the Debtor, and absent any intervening limitations prior to the effective date of a chapter 11 plan of reorganization. These savings could substantially enhance the Debtor's value and contribute to the Debtor's efforts toward a successful reorganization.

10. The ability of a corporation to use its Tax Attributes to reduce future tax liability is subject to certain limitations under section 382 of the Tax Code ("**Section 382**"). In general, if a corporation undergoes an "ownership change," Section 382 limits the corporation's ability to use its net operating losses and certain other tax attributes to offset future income. Under Section 382, an ownership change occurs when the percentage (by value) of a corporation's equity held by one or more "5-percent shareholders" (as such term is defined in Section 382) increases by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during a three-year rolling testing period.[3]

11. When an ownership change occurs, Section 382 limits the amount of taxable income that can be offset by a pre-change-of-ownership loss to the long-term tax exempt bond rate (as published by the United States Treasury), as of the ownership change date, multiplied by the value of the stock of the corporation immediately before the ownership change (a "**Section 382 Limitation**"). Under certain circumstances, built-in losses recognized during the five-year period after the change date are subject to similar annual limitations. Accordingly, an ownership change under Section 382 prior to the effective date of a chapter 11 plan may

[3] For example, an individual ("A") owns 50.1% of the stock of corporation XYZ ("XYZ"). A sells her 50.1% interest to another individual ("B"), who owns 5% of XYZ's stock. Under Section 382, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5% to 55.1%) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5-percent shareholder and increases his ownership by more than 50 percentage points during the testing period. To be clear, a 5-percent shareholder increasing its holding by 50 *percent* (i.e., from 5% to 7.5%) as opposed to 50 *percentage points* would not, in and of itself, cause an ownership change. However, if an ownership change has occurred during the testing period, then a subsequent ownership change determination is based only on equity trading that occurs subsequent to the prior ownership change.

hinder or significantly reduce the ability of the Debtor to use its Tax Attributes on a reorganized basis, thereby resulting in a loss of potential value to the Debtor's estate.

12. Similarly, if a 50-percent or greater shareholder were, for federal or state tax purposes, to treat its equity interests in the Debtor as becoming worthless prior to the Debtor emerging from chapter 11 protection, Section 382(g)(4)(D) of the Tax Code would deem such treatment as a transfer, which could trigger an ownership change, and thus adversely affect the Debtor's Tax Attributes.

13. The Debtor seeks authorization to protect and preserve its Tax Attributes by (a) establishing notification and hearing procedures regarding the trading of the Debtor's equity securities that must be complied with before trades or transfers of such securities become effective and (b) establishing similar notice and hearing procedures regarding the claiming of a worthlessness deduction for federal or state tax purposes with respect to the Debtor's equity securities.

**A. Equity Trading**

14. By establishing procedures for continuously monitoring the trading of the Debtor's equity securities, the Debtor can preserve its ability to seek substantive relief at the appropriate time, particularly if it appears that additional trading may jeopardize the use of the Debtor's Tax Attributes. Accordingly, the Debtor requests that this Court enter an order establishing the following procedures for the trading of equity securities of the Debtor (the "**Equity Trading Procedures**"):

(a) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a)) who currently is or hereafter becomes a Shareholder (as such term is defined in paragraph (e) below) must file with the Court, and serve upon the Debtor and counsel for the Debtor, a notice of such status, in substantially the form attached hereto as Exhibit C, on or before the later of (i) twenty (20) calendar days after entry of the Interim Order or (ii) ten (10) days after becoming a Shareholder.

(b) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined in paragraph (e) below) that would result in an increase in the amount of stock of the Debtor beneficially owned by a Shareholder or would result in a person or entity becoming a Shareholder, such Shareholder or person or entity must file with the Court, and serve on the Debtor and counsel for the Debtor, an advance written notice in substantially the form attached hereto as Exhibit D (a "**Notice of Intent to Purchase, Acquire or Otherwise Accumulate an Equity Interest**"), of the intended transfer of equity securities.

(c) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock) that would result in a decrease in the amount of stock of the Debtor beneficially owned by a Shareholder or would result in a person or entity ceasing to be a Shareholder, such Shareholder must file with the Court, and serve on the Debtor and counsel for the Debtor, an advance written notice, in substantially the form attached hereto as Exhibit E (a "**Notice of Intent to Sell, Trade or Otherwise Transfer an Equity Interest**" and, collectively with a Notice of Intent to Purchase, Acquire or Otherwise Accumulate an Equity Interest, a "**Notice of Proposed Transfer**"), of the intended transfer of equity securities.

(d) The Debtor shall have fifteen (15) calendar days after receipt of a Notice of Proposed Transfer to file with the Court and serve on such Shareholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer might adversely affect the Debtor's ability to utilize its Tax Attributes. If the Debtor files an objection, such transfer will not be effective unless approved by a final and non-appealable order of the Court. If the Debtor does not object within such 15-day period, such transfer shall be permitted to proceed solely as set forth in the Notice of Proposed Transfer. Further transfers within the scope of this paragraph shall be the subject of additional notices as set forth herein, with an additional 15-day waiting period.

(e) For purposes of these procedures: (i) a "**Shareholder**" is any person or entity that beneficially owns equity securities of the Debtor, (ii) "**beneficial ownership**" of equity securities means beneficial ownership for U.S. federal income tax purposes as determined in accordance with applicable rules under Section 382 of the Tax Code, Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (A) direct and indirect, actual and constructive, beneficial ownership (for example, a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (B) ownership by such holder's family members and

other related persons and persons acting in concert with such holder to make a coordinated acquisition of stock, and (C) ownership of shares which such holder has an option to acquire, and (iii) an "**option**" to acquire stock includes any option, contingent purchase, warrant, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

**B. Worthless Stock Deductions**

15. The Debtor also requests that the Court enter an order restricting the ability of shareholders that own or have owned 50% or more, by value, of the Debtor's equity securities to claim a deduction for the worthlessness of those securities on their federal or state tax returns for a tax year ending before the Debtor emerges from chapter 11 protection. Under Section 382(g)(4)(D) of the Tax Code, any securities held by such a shareholder are treated as though they were transferred if such shareholder claims a worthlessness deduction with respect to such securities. It is therefore essential that shareholders that own or have owned 50% or more of the Debtor's equity securities defer claiming such deduction until after the Debtor has emerged from bankruptcy.

16. By restricting 50-percent shareholders from claiming a worthlessness deduction prior to the Debtor's emergence from chapter 11 protection, the Debtor can preserve its ability to seek substantive relief at the appropriate time. Accordingly, the Debtor requests that the Court enter an order establishing the following procedures (the "**Worthless Stock Deduction Procedures**"):

(a) Any person or entity that currently is or becomes a 50-percent Shareholder (as such term is defined in paragraph (d) below) must file with the Court, and serve upon the Debtor and counsel for the Debtor, a notice of such status, in substantially the form attached hereto as Exhibit F, on or before the later of (i) twenty (20) calendar days after entry of the Interim Order or (ii) ten (10) days after becoming a 50-percent Shareholder.

(b) At least thirty (30) calendar days prior to filing any federal or state tax return, or any amendment to such a return, claiming any deduction for

worthlessness of the Debtor's stock, for a tax year ending before the Debtor's emergence from chapter 11 protection, such 50-percent Shareholder must file with the Court, and serve on the Debtor and counsel for the Debtor, an advance written notice in substantially the form attached hereto as Exhibit G (a "**Notice of Intent to Claim a Worthless Stock Deduction**"), of the intended claim of worthlessness.

(c) The Debtor shall have thirty (30) calendar days after receipt of a Notice of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50-percent Shareholder an objection to any proposed claim of worthlessness described in the Notice of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtor's ability to utilize its Tax Attributes. If the Debtor files an objection, the filing of the return with such claim will not be permitted unless approved by a final and non-appealable order of the Court. If the Debtor does not object within such 30-day period, the filing of the return with such claim would be permitted as set forth in the Notice of Intent to Claim a Worthless Stock Deduction. Additional returns within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional 30-day waiting period.

(d) For purposes of these procedures: (i) a "**50-percent Shareholder**" is any person or entity that at any time within such entity's last three taxable years has had beneficial ownership of 50% or more of the stock of the Debtor; (ii) "**beneficial ownership**" of equity securities means beneficial ownership for U.S. federal income tax purposes as determined in accordance with applicable rules under Section 382 of the Tax Code, Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (A) direct and indirect, actual and constructive, beneficial ownership (for example, a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (B) ownership by such holder's family members and other related persons and persons acting in concert with such holder to make a coordinated acquisition of stock, and (C) ownership of shares which such holder has an option to acquire; and (iii) an "**option**" to acquire stock includes any option, contingent purchase, warrant, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

17. The Debtor requests that the Court order that any purchase, sale, or other transfer of, or any claim of worthlessness with respect to, equity securities in the Debtor in

violation of these procedures be null and void *ab initio* as an act in violation of the automatic stay under Bankruptcy Code Sections 362 and 105(a).

18. The Debtor also requests that the Court permit the Debtor to waive, in writing and in its sole and absolute discretion, any and all restrictions, stays, and notification procedures contained in this Motion or in any order entered with respect hereto. The Debtor will be able to grant such waivers for small holders based on an analysis of the specific facts at the time of the proposed transfer, while still protecting the Debtor's tax attributes.

19. To ensure parties in interest receive appropriate notice of the Equity Trading Procedures and the Worthless Stock Deduction Procedures, the Debtor requests that this Court approve the following notice provisions.

20. Following entry of the Interim Order granting this Motion, the Debtor proposes to send a notice in substantially the form attached hereto as Exhibit H (the "**Notice of Order**") to: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) Jeffrey C. Krause, Samuel A. Newman, and Genevieve G. Weiner, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, and Michael R. Nestor, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801; (c) the Internal Revenue Service; (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (e) the Securities and Exchange Commission; (f) as applicable, any transfer agent for the Debtor's stock; and (g) all parties entitled to notice pursuant to Local Rule 9013-1(m).

21. Upon receipt of the Notice of Order, any transfer agent for the Debtor's stock shall be required to send such Notice of Order to all holders of the Debtor's stock (or an option with respect thereto) registered with such transfer agent (the "**Registered Holders**") no

later than five business days after receipt of the Notice of Order. However, if any transfer agent provides the Debtor with the names and addresses of all holders of such securities no later than five business days after receipt of the Notice of Order, the Debtor shall be required to deliver the Notice of Order to such holders. Any such Registered Holder shall be required, in turn, to provide the Notice of Order to any holder for whose account the Registered Holder holds the Debtor's stock (or an option with respect thereto), and so on down the chain of ownership for all such holders of the Debtor's stock. Additionally, any person, entity or broker, or agent acting on their behalf, that sells the Debtor's stock (or an option with respect thereto) to another person or entity shall be required to provide a copy of the Notice of Order authorizing the procedures to the purchaser (or any broker or agent acting on their behalf), to the extent reasonably feasible. The Notice of Order will provide information as to the procedures to be followed in trading the Debtor's stock and include notice of a final hearing and opportunity to object before entry of a Final Order.

22. The foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the relevant counterparties with a notice and an opportunity to object and attend a hearing. See In re Colo. Mountain Cellars, Inc., 226 B.R. 244, 246 (D. Colo. 1998) (noting that hearing is not required to satisfy Rule 9014 of the Bankruptcy Rules). Further, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtor's estate to unnecessary administrative expenses.

## BASIS FOR RELIEF

### A. The Significance of the Debtor's Tax Attributes

23. The Debtor has incurred approximately $100 million in NOLs for U.S. federal income tax purposes.

24. Section 172(b) of the Tax Code permits corporations to carry forward NOLs to offset future taxable income and tax liability, thereby significantly improving such corporations' cash position in the future. The Debtor's NOLs are a valuable asset of its estate that, if available, could help facilitate the Debtor's successful reorganization and serve to improve creditor recoveries. The Debtor's ability to use its Tax Attributes, however, could be severely limited under Section 382 as a result of the trading and accumulation of Debtor's equity securities, or claims of worthlessness with respect thereto, prior to the consummation of a chapter 11 plan.

**B. The Provisions of Section 382**

25. As described above, Section 382 limits the amount of taxable income that can be offset by a corporation's NOLs in taxable years (or portions thereof) following an ownership change. The formulaic limitation under Section 382—i.e., limiting income offset by "pre-change losses" to an amount equal to the value of the corporation (prior to the ownership change) multiplied by the long-term tax exempt rate—can severely restrict the ability to use "pre-change losses," as the value of the stock of a distressed company may be quite low. The relief sought herein is necessary to avoid the irreparable harm that would be caused by unrestricted trading of, and claims of worthlessness with respect to, equity securities in the Debtor and the Debtor's resulting inability to offset taxable income with its NOLs.

**C. Special Section 382 Bankruptcy Rules**

26. The limitations imposed by Section 382 in the context of an ownership change pursuant to a confirmed chapter 11 plan are significantly more relaxed than those applicable outside chapter 11. First, an ownership change must occur pursuant to the consummation of the plan of reorganization in order for the Debtor to qualify for the Section 382 bankruptcy relief provisions—Section 382(l)(5) and (l)(6). Under Section 382(l)(5), a Section

382 limitation will not apply to an ownership change resulting from consummation of a chapter 11 plan, provided that under the plan, the debtor's pre-change shareholders (i.e., persons or entities who owned the debtor's stock immediately before such ownership change) or certain qualified creditors emerge from the reorganization owning at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change as a result of being shareholders or qualified creditors immediately before such change.

27. Second, Section 382(l)(6) provides that if a corporation undergoes an ownership change pursuant to a plan of reorganization in chapter 11 and Section 382(l)(5) does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then under Section 382(l)(6), the value of the equity of Debtor for purposes of calculating the Section 382 Limitation shall reflect the increase (if any) in value of the old loss corporation's stock resulting from any surrender or cancellation of creditors' claims in the transaction. Thus, assuming the value of the equity of Debtor increases as a result of a reorganization, Section 382(l)(6) will provide for a higher annual limitation than would result under the general rules of Section 382 and could allow the Debtor to use a greater portion of its Tax Attributes to offset any post-change income.

28. Third, preventing an ownership change prior to the effective date of a plan of reorganization may also benefit the Debtor's estate by allowing the Debtor a greater use of its Tax Attributes to offset any income arising on or prior to the effective date of the chapter 11 plan. Thus, in all circumstances, it is in the best interests of the Debtor and its estate to grant the requested relief so as to prevent an ownership change prior to consummation of a plan of reorganization.

**D. The Requested Relief is Narrowly Tailored**

29. The requested relief does not *per se* bar all trading in, or all claims of worthlessness with respect to, the Debtor's stock. Rather, it merely implements notice and hearing procedures for such trading and claims. At this early juncture, the Debtor seeks to establish procedures only to monitor those types of stock trading and restrict those types of worthlessness deductions that would pose a serious risk under the Section 382 ownership change test, so as to preserve the Debtor's ability to seek substantive relief if it appears that a proposed trade or claim of worthlessness will jeopardize the use of its Tax Attributes. The procedures requested by the Debtor in this Motion would permit most stock trading to continue, subject to applicable law. The restrictions on claiming deductions for worthless stock would apply only to 50-percent shareholders, and even then would not prohibit such deductions entirely, but would merely require them to be postponed to taxable year when the Debtor emerges from chapter 11 protection.

**E. The Requested Relief is Necessary to Avoid Irreparable Harm to the Debtor**

30. The relief sought herein is necessary to avoid the irreparable harm which could be caused by unrestricted trading in the Debtor's equity securities and the Debtor's resulting inability to utilize its Tax Attributes.

31. Absent granting the relief requested herein on an immediate basis, the Debtor could be irreparably harmed by the mere filing of this Motion. If the Debtor filed this Motion in accordance with the usual notice procedures set forth in the Bankruptcy Rules, the Debtor believes it is likely that a flurry of trading in equity securities of the Debtor could immediately follow. Parties holding such equity securities might rush to transfer their equity securities before the restrictions on such trading are imposed by this Court. Similarly, a 50-percent shareholder could rush to claim a worthless tax deduction with respect to the equity

securities for the 2016 tax year. Such unrestricted trading or deductions would put the Tax Attributes in jeopardy, as described above, and would therefore be counterproductive to the Debtor's objectives in seeking this relief and could jeopardize the Debtor's ability to reorganize. Accordingly, the Debtor requests that the procedures described herein be approved.

**F. Tax Attributes are Property of the Debtor's Estate and are Entitled to Court Protection**

32. Courts have uniformly held that a debtor's net operating losses constitute property of the estate under Bankruptcy Code Section 541 and, as such, courts have authority to implement certain protective measures to preserve these tax attributes. The seminal case articulating this rule is In re Prudential Lines, Inc., 107 B.R. 832 (Bankr. S.D.N.Y. 1989), aff'd, 119 B.R. 430 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991), cert. denied 502 U.S. 821 (1991). In Prudential Lines, the Bankruptcy Court for the Southern District of New York enjoined a parent corporation from taking a worthless stock deduction with respect to its wholly owned debtor subsidiary on the grounds that doing so would destroy its debtor-subsidiary's net operating losses. In issuing the injunction, the court held that a "debtor's potential ability to utilize [net operating losses] is property of [the] estate." 107 B.R. at 838. In addition, "the taking of a worthless stock deduction is an exercise of control over a debtor's [net operating losses]," 107 B.R. at 842, and thus was properly subject to the automatic stay provisions of Bankruptcy Code Section 362. See In re Grossman's, Inc., Case No. 97-695 (PJW) (Bankr. D. Del. Oct. 9, 1997) (debtor's net operating loss carry-forwards are property of debtor's estates protected by the automatic stay provisions of the Bankruptcy Code); In re White Metal Rolling & Stamping Corp., 222 B.R, 417, 424 (Bankr. S.D.N.Y, 1998) ("it is beyond peradventure that [net operating loss] carry-backs and carryovers are property of the estate of the loss corporation that generated them").

33. Similarly, in In re Phar-Mor, Inc., the debtors moved to prohibit the transfer of their stock that could have an adverse effect on their ability to use NOLs. 152 B.R. 924 (Bankr. N.D. Ohio 1993). The court held that the NOLs qualified as property of the estate and issued an injunctive order and enforced the automatic stay, thereby protecting the assets of the debtors' estates. Significantly, the court granted the relief requested even though the stockholders did not state any intent to sell their stock and even though the debtors did not show that a sale was pending that would trigger the prescribed ownership change under Section 382. Id. at 927. The court observed that "[w]hat is certain is that the NOL has a potential value, as yet undetermined, which will be of benefit to creditors and will assist debtors in their reorganization process. This asset is entitled to protection while debtors move forward toward reorganization." Id. The Phar-Mor court also concluded that, because the debtors were seeking to enforce the stay, they did not have to meet the more stringent requirements for preliminary injunctive relief. Id. at 926.

34. Because the Debtor's NOLs are property of its estate, this Court has the authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting the transfer of equity securities in the debtor that could jeopardize the existence of this valuable asset.

**G. Bankruptcy Courts Routinely Grant the Relief Requested in the Motion**

35. Courts have routinely restricted transfers of equity securities or claims of worthlessness, or otherwise issued injunctive relief to protect a debtor against the possible loss of its NOLs. See, e.g., In re American Apparel, LLC, Case No. 16-12551 (BLS) (Bankr. D. Del. Nov. 15, 2016); In re Sports Authority Holdings, Inc., Case No. 16-10527 (MFW) (Bankr. D. Del. Mar. 3, 2016); In re The PMI Group, Inc., Case No. 11-13730 (BLS) (Bankr. D. Del. Feb. 8, 2012); In re Newpage Corporation, Case No. 11-12804 (KG) (Bankr. D. Del. Oct. 4, 2011); In re

Middlebrook Pharmaceuticals, Case No. 10-11485 (MFW) (Bankr. D. Del. June 7, 2010); In re Accuride Corp., Case No. 09-13449 (BLS) (Bankr. D. Del. Nov. 2, 2009); In re Freedom Commc'ns Holdings, Inc., Case No. 09-13046 (BLS) (Bankr. D. Del. Sept. 2, 2009).

36. The Debtor's Tax Attributes are valuable assets that will inure to the benefit of its stakeholders and facilitate the Debtor's reorganization. Unrestricted trading in equity securities of the Debtor with no advance warning of such trades or unrestricted deductions for worthless stock would jeopardize and impair the value of these assets. The requested relief imposes a minimal burden to achieve a substantial benefit for the Debtor, its creditors, and other interested parties. Accordingly, this Court should grant the requested relief and establish a notice and hearing procedure governing the trading of the Debtor's equity securities and parties claiming that such equity securities are worthless.

## WAIVER OF ANY APPLICABLE STAY

37. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for the estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## CONSENT TO JURISDICTION

38. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE OF MOTION

39. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) Jeffrey C. Krause, Samuel A. Newman, and Genevieve G. Weiner, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, and Michael R. Nestor, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801; (c) the Internal Revenue Service; (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (e) as applicable, any transfer agent for the Debtor's stock; and (f) all parties entitled to notice pursuant to Local Rule 9013-1(m). In addition, the Debtor has also served notice of this Motion on (a) on each individual or entity that directly or indirectly owns, controls, or holds, with power to vote, stock of the Debtor as of the Petition Date. The Debtor submits that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: December 16, 2016
Wilmington, Delaware

*/s/ Matthew G. Summers*
Matthew G. Summers (No. 5533)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com

Vincent J. Marriott, III*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 864-8236
Facsimile: (215) 864-9762
E-mail: marriott@ballardspahr.com

-and-

Paul E. Harner*
BALLARD SPAHR LLP
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 223-0200
Facsimile: (212) 223-1942
E-mail:harnerp@ballardspahr.com
(**Pro Hac Vice admission pending*)

*Proposed Counsel for the Debtor*